15BH

#4

**FILED**

<u>Civil Cover Sheet</u>

Case number: 3:20-cv-248

DEC 08 2020

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

TERENCE CRAWLEY, plaintiff
v.
S. Felix, in his official capacity as Captain,
Vicki Moser, in her official capacity as Warden.

<u>Civil Complaint (28 USC § 1331)</u>
Civil Action No. <u>3:20-CV-248</u>

TERM

ENCLOSED: • Civil Complaint and Exhibits   pg 2-30 + Exhibits ( - );
• Motion and Declaration to Proceed in Forma Pauperis + Exhibit,
Authorization to effect debit of inmate account;
• (2) copy of Summons for each defendant;
• (2) Form USM-285 for U.S. Marshall service upon defendants;
• Motion to Appoint Counsel
• Prisoner Declarations in Support of Civil Complaint
Ex. F "Prisoner Declarations" of Civil Complaint

NOTICE TO CLERK & MEDIATION COUNCIL OF WESTERN PA: The Plaintiff is partial to an immediate & Amicable resolution through mediation with defendants counsel. TDC

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

TERENCE CRAWLEY, plaintiff

v.

S. Felix, in his official capacity as Captain
of FCI Loretto; Vicki Moser, in her official
Capacity as Warden of FCI Loretto

Civil Complaint (28 usc § 1331)
Civil Action No. 3:20-CV-248

Civil Complaint (28 usc § 1331)

## I. JURISDICTION and VENUE

1) This is a civil action authorized by the jurisdiction provided under
28 U.S.C. § 1331 and § 1343 (a)(3), as the claims herein are for redress
the deprivation, under color of federal law, of rights secured by the
Constitution of the United States. Plaintiff seeks declaratory relief
pursuant to 28 U.S.C. §2201 and §2202. Plaintiff's claims for injunctive
relief are authorized by 28 U.S.C. §2283 and §2284 and Rule 65 of the Federal
Rules of Civil Procedure.

2.) The UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA,
Penn Traffic Building, 319 Washington St., Suite 208, Johnstown, PA 15901,
is an appropriate venue under 28 U.S.C. §1391 (b)(2) because the events
giving rise to this claim are occurring at FCI Loretto which is in this

Court's District.

## II. Plaintiff

3.) Plaintiff, Terence Crawley, is and was at all times mentioned herein a prisoner in the custody of the Federal Bureau of Prisons ("BOP") and confined in FCI Loretto, located in ~~Cresson~~ Loretto, Pennsylvania.

4.) As a preliminary matter, the Plaintiff respectfully asks the Court to consider this pro se pleading liberally. See Erickson v. Pardis, 551 U.S. 89, 94 (2007).

## III. Defendants

5.) Defendant, S. Felix[*1] is a Correctional Officer in FCI Loretto who, at all times mentioned in this complaint held the rank of Captain/Executive Staff and was assigned to FCI Loretto;

6.) Defendant, Vicki Moser is the Warden of FCI Loretto. She is legally responsible for the operation of FCI Loretto and for the Welfare of all inmates in that prison.

7.) Each defendant is sued in his/her official capacity. At all times mentioned in this complaint each defendant acted under the color of federal law, and are federal employees of the BOP.

----

[*1] The Captain S. Felix refuses to provide his full name to the Plaintiff.

<u>IV. FACTS</u>

8.) FCI Loretto is currently in the midst of it's second outbreak of COVID-19 among both staff and inmates. Upon information and belief, there are ~~250-260~~ infected people, approx. ~~240~~ of which are inmates as of 12/4/2020. See COVID-19 cases, Federal Bureau of Prisons, available at, https://www.bop.gov/coronavirus/. (The infected numbers climb as Plaintiff writes this Complaint)

The Center for Disease Control ("CDC") has issued nationwide directives which are intended to minimize the death toll and spread of the virus. The U.S. Congress passed the CoronaVirus Aid, Relief, and Economic Security Act, ("CARES ACT"), which authorizes and directs the Attorney General, and the BOP to "lengthen the maximum amount of time for which the Director [of the BOP] is authorized to place a prisoner in home confinement" under 18 U.S.C. § 3624 (c)(2). See CARES ACT, Pub. L. No. 116-136, §12003 (b)(2), 134 Stat. 281, 516 (Mar. 27, 2020).

The Warden, Vicki Moser categorically refuses to use the power of the CARES ACT and obey the directive of Congress's mandate and instruction of the Attorney General to reduce the inmate/prisoner population of FCI Loretto to minimize the spread of COVID-19 within the prison amongst prisoners, staff and the surrounding community. At best, the Warden has only directed staff at FCI Loretto to approve prisoners who are already within 2-6 months of the Residential Re-entry Center (RRC)/Halfway house date, while discriminating against the Plaintiff, and other inmates/prisoners with underlying health risks

(as defined by the CDC) who are at the most risk of having severe complications from an infection of the COVID-19 virus. This act of discrimination creates an unsafe living condition for prisoners of FCI Loretto and, together with other facts raised herein, create an cruel and unusual punishment, in violation of the Eigth Amendment of the U.S. Constitution.

9.) Prisoners housed in General Population are not provided with anti-bacterial soap to help combat the spread of COVID-19. Prisoners housed in the Special Housing Units ("SHU"), such as the Plaintiff, are not provided with adequate soap to maintain basic human hygiene, or to comply with the CDC's directive to implement increased hand washing and hygiene to combat against the spread of COVID-19 in the U.S., prisons and the overall community. Prisoners are also categorically banned and prohibited from purchasing hand/body soap, such as the Dial antibacterial soap, et al., which is available on commissary to prisoners in General Population. This is a new rule created and implemented, with the prior approval of the Warden Vicki Moser (the "Warden"), by S. Felix (the "Captain") as early as March 2, 2020. The soap which is provided is limited to one (4 fl. oz.) all-in-one shampoo per week, and three tiny "pods" per week, per prisoner. The "pods" are smaller in comparison to a "Tide pod", one would use to wash clothes. This is insufficient to wash your hands after every bathroom usage, touching any potentially contaminated surface, and washing one's body once a day in the shower; a basic human need.

10) Plaintiff and prisoners in the SHU are not provided with KN95 protective masks. The Plaintiff was issued a mask in July, 2020 while in the

general population and was placed in the SHU on August 28, 2020 AND has
never been re-issued a mask. Even if the staff would have been directed
by the Captain and the Warden to issue a mask, it would be a thinly-
veiled cloth mask which requires daily washing. Of course, this is not
practicable since prisoners in the SHU don't even have enough soap to
wash their hands or maintain basic human hygiene.

11.) The Plaintiff is housed in the SHU, which is not equipped with ANY
emergency panic button/system to notify staff of a medical emergency.
This is especially dangerous and unsafe given that the SHU cells are all
(Disciplinary Seg. & Administrative Seg) down a wing which is also behind
another locked door. The only method a prisoner has available to attempt to
obtain medical assistance in the event of an emergency is to violently kick and
scream for help on the cell doors which are locked-heavy-steel doors. If
the Plaintiff or any prisoner in the SHU happens to be in a cell by themselves,
as is required when isolating for Quarantine sake, and has a medical
emergency which disables them from effectively kicking and screaming
for help loud enough so the staff can hear them, way down the hall,
behind two steel doors, they can easily die unnoticed within a very
short time frame. Even if the Plaintiff has a cellie, that cellie must
be physically able to exert the massive amounts of energy required to
get the staff to hear your pleas for help. Then that staff must contact
medical which is located at least, up one flight of stairs, approx. 100
yards or more away and also behind two more locked steel doors. The
staff at FCI Loretto can not hop onto a "buggie" to rush to a medical

emergency because FCI Loretto is uniquely made from other prisons in that everything is located inside the several adjacent buildings. So, medical typically takes at least 10 minutes to arrive by walking to the SHU. The Plaintiff intimately knows this because on or about Feb. 7, 2020, he passed out in the shower and fell. His cellie had to kick and scream to get the attention of staff ... then it took about 10 minutes for medical to arrive. Thereafter, it was discovered that the Plaintiff Crawley's blood sugar (glucose) levels were at a low (51)-(59). Crawley was given a glucose supplement, which temporarily raised his sugar, but on the next morning his glucose was low at (60) again, which he was then given another supplement. This is only one example, but if a prisoner has a seizure, or heart attack, or head injury, or is not able to breathe (self-ambulate) due to infection by COVID-19, death is certainly imminent under the present unsafe conditions which exist in the SHU and the "Quarantine Block" in the North Five Wing of the prison. The Warden is and always aware that there are no emergency panic system in ANY locked cell at FCI Loretto. The Plaintiff has also notified the Warden by filing a "BP-9" grievance on 11/28/2020.

12.) At the behest of the Warden, the Captain as of 9/2/2020 (Sept. 1, 2020) completely banned and prohibited the possession and/or ordering of ANY and ALL publications by prisoners in the SHU. This includes the prohibition of purchasing or possessing a radio from the prisoners own property while in the SHU. Although the Captain attempts to

fraudulently convey in his "Special Housing Rules and Regulations" that prisoners, such as Crawley, may obtain "Cosmetic items" through commissary, see Ex. "A" (SHU RULES), pg. 2 Note 10, this does not include soap to wash your hands and body, See Ex "B" (SHU Commissary). Also, on Ex. A, pg. 2 note 9, the Captain attempts to fraudulently imply that prisoners are not prohibited from buying a radio, but must only ask for "written approval" from the Captain, yet the Captain expressly verbally tells all SHU prisoners that we can't buy radios or batteries. This is also in direct contravenance to current BOP Policy which expressly authorizes the possession and purchase of publications and a radio while housed in the SHU. The Warden has not issued a Notice of an Institutional Supplement either, notifying prisoners of any changes to BOP Policy which would authorize this arbitrary and unauthorized action by the Captain and the Warden. Thus, this action specifically is in violation of BOP Policy and a violation of plaintiff's rights under the Constitution. See Ex "I" "Not Adequate soap"

13) Plaintiff and other prisoners in the SHU are locked in their cells for 24 hrs./day, and not provided ANY exercise time whatsoever. Plaintiff and other prisoners in the SHU have not received ANY notice, inmate memorandums, or ANY process whatsoever prior, during this change which further restricts every prisoner in the SHU liberty interests to be placed on notice when actions by staff have a punitive effect. This policy is only authorized by the Warden and implemented by the Captain.

14). Prisoners such as the Plaintiff in the SHU are not permitted access to the law library EVER. Plaintiff has received ZERO NOTICE.

15). FCI Loretto does not have enough space to properly isolate and Quarantine suspected or confirmed infected prisoners in a manner which is approved by the CDC. Upon information and belief, prisoners who are suspected of being infected are being housed in the Visiting room and sleeping on the floors. In addition, prisoners who are Quarantined in the North Five Wing are routinely placed in the SHU after coming into contact with other possibly infected prisoners. The population should immediately reduced.

16) The Plaintiff, Terence Crawley, was placed in the SHU on Aug. 25, 2020, under SIS investigation for a fight. On Sept. 9, 2020, that investigation was concluded and Crawley received an incident report on 9/9/2020 charging him with assault. On Sept. 13, 2020, inmate Jimmie Harper #14165-088, the alleged victim, was transferred out of the prison to the Residential Drug Addiction Program (RDAP). On Sept. 15, 2020 the Plaintiff received a "re-write" with no substantial changes. Thereafter, on 11/4/2020, the Plaintiff was found guilty of assault, and sanctioned. His sanctions included: (27) days loss of Good Conduct time, (90) days loss of visiting & commissary privileges, and (14) days of Disciplinary Segregation time (which was suspended - pending clear conduct for six(6)mths). The Plaintiff was NEVER sanctioned to any Disciplinary Segregation,

yet he has been forced to remain in the SHU under the above listed and aforementioned conditions, without receiving ANY NOTICE AS TO why. The Plaintiff, as of the writing of this sentence has been in restrictive housing, under extremely excessive and unsafe conditions, for Thirty (30) DAYS. He has not received any ADMINI-STRATIVE DETENTION ORDER, notifying him that he is under investig-ation, although this would not be a sufficient reason, or otherwise. BOP Program Statent (Policy) mandates that every prisoner who is placed in the ON Administrative Detention will "ordinarily receive a copy of the ADO [ADMIN. DETENTION ORDER], within 24 hrs., detailing the reason for placement." That reason must be "The specific reason for placement in the SHU must be supported by objective evidence and clearly articulated in the narrative". See BOP Program Statement, OPI : CPD / CSB NUMBER : 5270.11  (11/23/2016), Special Housing Units , § 541.25 (a). Furthermore, § 541.26 of the same section "Review of Placement in the SHU", it clearly instructs that the Plaintiff Crawley is entitled to a, three day review (a), a seven day review (b), and a thirty day review (c). Under § 541.26 (a)(b)(c), the review must include : inmate records, all available memoranda from staff, and all available investigatory memoranda. The Prisoner is also entitled to attend this review and challenge their placement in the SHU. In this case, the Captain has completely foregone any BOP establishes Policy and has arbitrarily placed Crawley in the SHU with absolutely ZERO notice. Crawley has filed a "BP-9" on 12/3/2020 by filing it with the Wardens Secretary Mr. Bolar, which also alleges the TORT FALSE IMPRISONMENT, which is being pursued via, the

Federal Tort Claim ACT, for monetary damages. Given that Crawley has completed the Disciplinary Process on 11/4/2020, and Jimmie Harper #14165-088 left the prison on 9/13/2020, there is no legitimate penological interest Crawley must ROT in the SHU, especially given the unsafe and inhumane conditions above and his medical issues presented below. This is a violation of Plaintiffs DUE PROCESS.

17.) Crawley has medical issues that place him at a higher risk of experiencing a severe infection related to a COVID-19 infection. Crawley has liver damage, chronic undiagnosed respiratory issues, Cardiac Arrhythmias, a prostate infection, and the blood infection of MRSA (which is due to a previous infection).
    * Crawley requires an attorney to assist in obtaining his medical records. He has requested them twice in the last month, to no avail. However, Crawley has seen the medical reports that factually substantiate his claims of medical issues, of course all except the chronic undiagnosed respiratory issues which he has been having for years. These medical issues, in fact, heighten the degree of the impropriety of his continued placement in these extremely unsafe and inhumane living conditions.

## V. EXHAUSTION OF LEGAL REMEDIES

18.) Plaintiff, Crawley is currently employing the available prisoner grievance

procedure at FCI Loretto to try to stop the defendants from continuing to violate his and others in the SHU constitutional rights. On 11/25/2020 plaintiff presented all the facts relating to this Complaint by filing a "BP-8" with his Case Manager Mr. Wirfle, and by filing a "BP-9" on 11/28/2020 with his Counselor Mr. T. Mack. As of yet, plaintiff has not received any response and continues to be detained illegally in horrible conditions. On 12/3/2020, plaintiff also gave the Warden's Secretary, Mr. Bolar, a "BP-9" outlining his False Imprisonment, yet Plaintiff continues to be illegally held in the SHU with no process.

19.) The Claimant, Crawley will continue the grievance procedure as expected. Yet he humbly urges the Court to take into consideration that he is already injured and thereafter he will only be further irreparably injured by his continued holding in a cell 24 hrs/day, under the above conditions, without any due process whatsoever, during an explosive COVID-19 outbreak within the prison. In addition, the virus is spreading like a wildfire due to the unique structure of FCI Loretto. All the units are comprised of either dormitories in open air, or rooms with six men. The men in rooms all share facilities, ice, showers with the whole unit. This is a serious situation which the Warden cannot contain due to the nature of the way the virus spreads undetected. So, to require the Plaintiff to wait before he may proceed with – at least – the opportunity to engage in a Mediation Conference to attempt to immediately resolve these claims while avoiding the costs

associated with extensive litigation, will most certainly place
not only the Plaintiff in imminent danger of serious injury
but will also injure countless other prisoners who may be able
to benefit from an amicable settlement through mediation.
Furthermore, the conditions raised herein are not sporadic, but
apart of a problematic policy which needs to be reformed now,
not one year or two years from now. The Grievance Process
is (the BP-8, BP-9, BP-10, BP-11) and there is a 20 deadline
that the respective staff must respond to the request for remedy.
This means that Crawley will be forced to contend with the current
conditions for a minimum of an additional 60 days, if staff promptly
respond within (15) days at each level, and a maximum of 80 days if
the staff respond on the 20th day, or not at all. The Claimant
presents issues which are extreme, even absent the COVID-19 pandemic,
but which are exponentially aggravated when taking into account the
current virus outbreak in the prison which continues to grow. Finally,
by the time Crawley completes the grievance process, he will have been held
in an illegal confinement under severe conditions for at least 90 days up
to 110 days. Drastic measures must be taken to protect the Plaintiffs
life and other prisoners as well. See Jackson v. District of Columbia,
254 F.3d 262 (D.C. Cir. 2001) (noting the conditions of confinement
were significant and requiring the plaintiff to first fully exhaust the
procedures would result in irreparable harm to Plaintiff. Thus, the Court
permitted Plaintiff to proceed simultaneously pursuing the grievance process.)

## VI. Legal Claims

20.) The conditions of Plaintiffs confinement in the SHU are significant and Atypical departure from the ordinary incidents of prison life, and when viewed under the totality of the circumstances create a single, identifiable harm which is unconstitutional.

The Eigth Amendment of the U.S. Constitution secures a prisoner's right to be free from conditions of confinement which amount to a cruel and unusual punishment. This means that the Warden must ensure that prison conditions are not depriving prisoners of basic human needs, such as, exercise, and proper hygiene as well as protective masks from COVID-19. In addition, in the context of cell restrictions where the doors are locked, a basic human need is the ability to notify staff of a medical emergency. Several Courts have ruled that the individual conditions of Plaintiffs confinement is in the extreme and unsafe living conditions. See, Keenan v. Hall, 83 F.3d 1083, 1089 (9th cir. 1996) (inmates must be provided with exercise time); Mitchell v. Horn, 318 F.3d 523 (3d cir. 2003) (noting even short placement in SHU under very bad conditions a constitutional violation); Delaney v. Detella, 256 F.3d 679 (7th cir. 2001) (exercise necessary); DeSpain v. Uphoff, 264 F.3d 965 (10th cir. 2001) (hygiene & sanitation is mandatory); Gillis v. Litscher, 460 F.3d 488 (7th cir. 2006) (same). In the instant case, Crawley and others in the SHU are held in their cells 24hrs/day, no exercise ever, no re-issue of protective masks, no adequate soap to maintain basic hygiene or increased hand washing.

The additional aggravating factor that Plaintiff and others in the SHU and the North Five Quarantine Wing are locked behind steel doors, with no emergency panic system to notify staff of a medical emergency unquestionably places them in an imminent danger of serious injury in the future. This alone, the Court may agree is an unsafe condition by itself. However, Plaintiff asks the Court to analyze the claims presented utilizing the "totality of conditions" theory. See Palmer v. Johnson, 193 F.3d 346 (5th Cir. 1999) AND Wilson v. Seiter, 501 US. 294, 305 (1991) (the U.S. Supreme Court addressed scenarios which several conditions add up to a single, identifiable harm).

The fact that FCI Loretto is in the middle of a COVID-19 outbreak where at least 20% - 25% of the prisoner population (250-260) is infected, certainly implicates the Plaintiffs' right to receive adequate medical care. Not providing prisoners in the SHU with protective masks and adequate soap to maintain increased hand washing as directed by the CDC to the Nation certainly is not providing adequate medical care. See Estelle v. Gamble, 429 US. 97, 103 (1976) (noting "[A]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met."). Crawley has had the same dirty mask since July, 2020 when he was in General population, and has NOT been re-issued another. Plaintiff is also provided only one (4 fl. oz) of all-in-one shampoo and three tiny "pods" which must last him for seven full days of increased hand washing, basic hygiene (showers), and usage after bathroom use. The fact that during this outbreak, the Warden has countless prisoners sleeping in the visiting room,

AND possibly the gym area, demonstrates that this prison is actually overcrowded AND there are not enough space to proper isolate and quarantine infected AND individuals who are symptomatic but still awaiting test results. This alone, places prisoners IN the ENTIRE prison IN AN unsafe living condition. See Rhodes v. Chapman, 452 U.S. 337 (1981) (noting prison overcrowding may not be, on it's own, unconstitutional, per se, but when coupled with other bad conditions adds up to a constitutional violation.)

   Even if the Court were to find that Crawley and others who are similarly situated have not yet been injured, these overall conditions create the imminent danger of "serious injury in the future". See Helling v. McKinney, 509 U.S. 25 (1993); Nelson v. Collins, 659 F2d 420 (4th cir. 1981) (noting several inhumane living conditions amount to unconstitutional violation); AND Jones v. United States, 91 F.3d 623 (3d cir. 1993) (noting prison officials [Warden] & [Captain] must provide reasonable care to inmates). (emphasis mine)


**21.)** The Warden is aware of the conditions aforementioned, because she conducts a walk-through every week in the SHU. Claimant has notified the Warden and the Captain via (BP-8, AND two BP-9's), yet he remains in the SHU w/o due process. The Warden knows there is a virus outbreak in the prison, yet refuses to expediently utilize AND expand usage of her authority and instruction by Congress, the Attorney General, and the BOP Director to "lengthen then maximum amount of time [ ]" AND "place a prisoner[s] on home

Confinement", pursuant to the CARES ACT, and 18 USC §3624(c)(2).
The Warden Knows the unique Architectural structure of FCI Loretto is
an aggravating factor in itself, in the context of her Ability to
Appropriately isolate and quarantine infected & symptomatic
prisoners. The evidence is blatant. Prisoners are over-flowing in
North Five Wing, over-flowing in the gym, over-flowing in the
visiting room, over-flowing every where because there is NO
physical way for the Warden to Appropriately isolate prisoners,
Because the units are Dormitories, where inmates can cough and
it may spread through the whole unit. The units comprised of
rooms are no different because all men must leave their rooms to use
all facilities (showers, phone, bathroom, ice, etc.) and cross contamin-
ation is inevitable when over 700 people in a small unit use the same
facilities repeatedly. See Ex. F "Prisoner Declarations"
The only Appropriate response of a reasonable person charged with
providing reasonable care of prisoners - who cannot care for themselves -
is to immediately reduce the prison population by either transfe-
rring the older and most at risk to another facility or by using
the POWER and OBEYING the directive of Congress and the Attorney
General to immediately reduce the prisoner population by placing
prisoners on Home Confinement - at the maximum allowable time
by law. The Warden thus, in refusing to do this, purposefully
ignores the most effective means of protecting prisoners lives,
and therefore fails to reasonably respond to the medical emergency
in this prison. See Estelle, 429 U.S. at 104. (1) Prison officials

know of the bad conditions and serious medical need of prisoners, yet (2) prison officials failed to respond appropriately.); See also Spruill v. Gillis, 372 F.3d 218 (3d cir. 2004) (noting that prison officials are deliberate indifferent when they fail to respond in an appropriate manner or not at all.).

Given that the Plaintiff Crawley has already had several medical examinations at FCI Loretto which reveal he has Cardiac Arrhythmias, prostate infection, and liver damage, the Warden will NOT even consider placing Crawley on Home Confinement to protect him from being infected with COVID-19. The Warden and the Captain both are responsible for his continued detention downstairs in a dungeon, 24 hrs. a day in a locked cell, no exercise, no law library, no adequate soap, no new protective mask, no access to ANY publications or a radio, while hundreds of prisoners are spreading the COVID-19 virus to staff and inmates and ultimately the public, AND all of this occurs with no NOTICE whatsoever.

22.) Crawley has a liberty interest in the conditions of his confinement and the Fourteenth Amendment of the Constitution secures his right to DUE PROCESS of law PRIOR to ANY trampling on his liberty interest by taking actions which amount to punitive conditions which are significant and atypical of the ordinary incidents of prison life.

In the instant case, Crawley has been in the SHU since Aug. 25, 2020, and the original purpose and intent of placing

him in the SHU (the alleged assault) has completely expired on 11/4/2020, once he completed the Disciplinary Hearing Process AND received SANCTIONS — which DID NOT include him serving ANY DISCIPLINARY Segregation time. From that precise moment, Crawley should have been immediately released from the SHU, especially given that the only legitimate penalogical concern (that Jimmie Harper #14165-088 is safe) expired on 9/13/2020 when Harper was transferred to RDAP at another prison. According to Applicable BOP Policy, (OPI: CPD/CSB NUMBER: 5270.11, §541.25 (a) AND §541. 26), Crawley should have received an ADMINISTRATIVE DETENTION ORDER "within 24 hours", after his original DETENTION expired on 11/4/2020. That Detention Order Also must provide "The specific reason for placement in the SHU" [AND] "must [] be supported by objective [] evidence AND clearly [] articulated in the narrative". (§541.25 (a)). Furthermore, Crawley is then entitled to a "Three Day review", a "Seven Day review", and a "Thirty Day Review", see (§541.26 (a)(b)(c) respectively), which "must include: inmate records, all available memoranda from staff, and all available investigatory memoranda," ID. §541.26. IN addition, Crawley is authorized to ATTEND this review. After the review, if Crawley DOES NOT agree, he may challenge his placement in the SHU by filing A "BP-9" to the Warden. See Yosuf v. United States, 642 F. Supp. 415 (M.D. PA 1986) Crawley has NEVER been afforded these protections ENCODED IN BOP policy, AND he has NEVER received ANY NOTICE OR OTHER DUE PROCESS OF LAW AS THE Fourteenth & Fifth Amendment DEMAND under the Constitution. Crawley has challenged his placement by filing

two BP-9's with the Warden, yet still continues to be illegally held in the SHU in very severe an inhumane conditions. Given his medical issues and the severe conditions of his current confinement only serve to further aggravate the impropriety of his continued cruel and unusual punishment and violation of his Due process rights. (See Ex. C "SIS investigation", Ex. D "incident report".) Courts have ruled that prison officials must provide prisoners with procedural due process prior to placement in segregation. See Gittens v. New York, 504 N.Y.S. 2d 969 (Ct. Cl. 1986) (prisoner was held in SHU for nine days beyond his disciplinary segregation time with NO Due process was ruled to be FALSE IMPRISONMENT); see also Sealey v. Giltner, 197 F.3d 578 (2d cir. 1999) (discussing that prisoners in Administrative segregation must in the least receive notice of why they are being sequestered from general population); see also Wikinson v. Austin, 545 U.S. 209 (2005) (noting that when the conditions in Administrative seg. are exceptionally harsh, prisoners are entitled to some procedural protections); see also Mitchell v. Horn, 318 F.3d 523 (3d cir. 2003) (noting that even a short placement in the SHU under bad conditions are unconstitutional). The Captain is the official who approves or disapproves of a prisoners placement in the SHU, and Crawley has notified the Captain verbally and by filing actually two BP-9's and a BP-8, to no avail. In contrast, since FCI Loretto is a low security prison, it has ZERO locks on All Doors except the SHU and North Five Wing. So, Crawley's continued placement in the SHU is certainly significant and Atypical of the General Populations. See Yosuf, 642 F.Supp 415, (noting breach of Prison Policy indicative of constitution violate.)

23.) Crawley should be immediately removed from the SHU and either immediately transferred to another facility or placed on Home Confinement due to his underlying health risks in the midst of the current COVID-19 outbreak at FCI Loretto.

The Warden has the legal authority to remove Crawley from the SHU and either arrange for his immediate transfer to another facility or place him on Home Confinement due to his underlying health risks. The CDC has given guidance on persons who are most at risk of a serious infection related to COVID-19. See (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html)

On the CDC website there are listed, heart conditions and liver disease as examples of underlying health risks that place people at serious risk of further complications which may be fatal due to COVID-19. Crawley's recent medical records (Crawley sent these records to the Sentencing Court, but asked for replacements from staff at FCI Loretto a month ago, to no avail) demonstrate that he is suffering from Cardiac Arrhythmias (Bradycardia & Sinus), and he is also suffering from liver damage (his ALT's /AST's, liver enzymes consistently read very high amounts in his blood tests). On 10/26 - 10/27/2020 he had to wear a "Holter" Monitor to monitor his chest pains associated with his Cardiac Arrhythmia, while in the SHU. According to Crawley's P.A. Mr. Burke, "if infected with COVID-19 the high blood temperature can create blood clots which can cause CARDIAC Arrest" in someone who suffers

from Cardiac Arrhythmias. At least one court recently ruled that "Arrythmias can be serious" when one is infected with COVID-19. See United States v. Miller, No. CCB-06-478, 2020 U.S. Dist. LEXIS 146317 (D.MD. Aug. 13, 2020). The medical staff have been frequently taking Crawley's blood to monitor his consistently high levels of liver enzymes in his blood. These are obvious symptoms of liver damage. See (Mayoclinic, symptoms of elevated liver enzymes, available at, https://www.mayoclinic.org/symptoms/elevated-liver-enzymes/basics/definition/symptoms-20050830 ) Also see United States v. Ludwig, No. 2:14-cr-00043-KJM-KJN-1, 2020 U.S. Dist. LEXIS 140934 (            ) (*Crawley is not able to provide the Court due to his denial of access to the law library) (noting "Inflamed or injured liver cells leak higher than normal amounts of certain chemicals, including liver enzymes into the bloodstream, elevating liver enzymes on blood tests.") On the medical records of the BOP, normal levels of ALT's/AST's are at their highest when it reads <50 m/ul. Crawley's readings are consistently 90+ m/ul, and may be even higher since he has not received his requested medical records.

The Warden is aware of Crawleys conditions, yet considers them to not be a "debilitating condition" which will not heal over time. This is evident from the fact that Crawley applies for Compassionate Release with the BOP and was denied, citing Crawley has no debilitating condition. See Ex. E "Denial of Compassionate Release". So, it is obvious the Warden has no intention of appropriately addressing the fact that Crawley is at a higher risk of serious injury in the future from

the COVID-19 outbreak which currently infects at least 20% - 25% of the prison population. Since Cardiac Arrhythmias and liver damage don't just heal themselves, and surely won't heal itself in enough time to avoid serious and potentially fatal consequences for Crawley if infected with COVID-19, it is apparent that the Warden is clearly demonstrating a blanket and purposeful willingness not to provide Appropriate care to Crawley by immediately transferring him or by placing him on Home Confinement or otherwise getting him and others similarly situated to a safe alternative. Estelle, 429 U.S at 104. ((1) prison officials knew about your serious medical need, and (2) the prison officials failed to respond reasonably to it). see also Plummer v. United States, 580 F.2d 72 (3d cir. 1978) (officials found negligent for prisoners exposure to tuberculosis).

Crawley respectfully urges the Court to act and ensure that the Warden of FCI Loretto is held accountable for her lack of care, apathy, and appropriate use of the legal methods available at her disposal to reduce the inmate population at FCI Loretto to above all, save lives. Jones v. United States, 91 F.3d 623 (3d Cir. 1993) (Prison officials must[] provide reasonable care to inmates.).


24.) The Permanent and Arbitrary Prohibition of _ANY_ and _ALL_ access
    to publications in the SHU violate Crawleys and other prisoners
    in the SHU right to Freedom of Speech and Association under the
    First Amendment of the U.S. Constitution.

As of Sept. 1, 2020 the Captain has prohibited ANY publications for prisoners in the SHU. Ex. A. "SHU RULES". This policy does not serve any legitimate penalogical interest. It does not meet any of the tests for reasonableness outlined in, Turner v. Safley, 482 U.S. 78 (1987). This U.S. Supreme Court decided over two decades ago that the Captains Actions are, alone, illegal. The "Turner" questions or standard, As it came to be known, requires the Court to analyze this policy by Answering four basic questions:

(1) Is the regulation reasonably related to a legitimate, neutral government interest?;

(2) Does the regulation leave open another way for you to exercise your constitutional rights?

(3) How does the issue impact other prisoners, prison guards, or officials AND prison resources?

(4) Are there obvious, easy alternatives to the regulation that would not restrict your right to free expression?

In the instant case, the obvious answer is NO to all four above questions. This is true because General Population is permitted to have their publications which they ordered from publishers with their own money or a family member did it for them. So the mailroom will still have to process the receipt of these publications AND send them to their respective units. However, All publications sent for prisoners in the SHU or North Five Wing or Anyone on "Quarantine" will have their

pg. 24 of 30

publications sent to their property in storage, instead of receiving them like others in general population. Prisoners are not even notified if any publication has arrived and then placed in their property. This same scenario was addressed in Spellman v. Hopper, 95 F. Supp. 2d 1267 (M.D. Al. 1999) (Prohibiting All publications blatant violation of First Amendment of Constitution). The fact that prisoners in general population can receive their publications demonstrates a blatant discrimination and denial of the SHU prisoners right to Equal Protection under the law in violation of the Fourteenth Amendment of the Constitution. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985) (discussing the standard to analyze an equal protection claim). The Captain created this policy and implemented it at the behest of the Warden, so he knows about it and should know it's a violation of prisoners in the SHU First Amendment and Fourteenth Amendment rights under the Constitution because everyone has complained about it, to no avail. This policy only serves to further aggravate the already listed and aforementioned severe conditions that Crawley must contend with – WITHOUT ANY DUE PROCESS OF LAW.

25) The Plaintiff, Terence Crawley, has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this Court grants the declaratory and injunctive relief which Plaintiff seeks.

# VII. PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this court enter judgement granting plaintiff:

26) A declaration that the acts and omissions described herein violated plaintiff's rights under the laws of the Constitution of the United States.

27.) A preliminary and permanent injunction ordering defendants S. Felix, Captain, and Vicki Moser, Warden to:

A. Immediately release Terence Crawley from the SHU and either place him on home confinement or immediately transfer him to either FCI Petersburg, FCI Fort Devins, FCI Fort Dix, FCI Jessup, FCI Miami, or FCI Yazoo within (10) days of notice of this Complaint and subsequent Alternative Dispute Resolution (ADR);   OR

B. Immediately begin reducing the population of FCI Loretto by placing prisoners on Home Confinement or Transfer until the population is no more than 500 prisoners;

C. Immediately begin providing DUE PROCESS to all prisoners in the SHU by providing NOTICE AND AN opportunity for a

prisoner to review and challenge placement in the SHU, in
compliance with BOP Policy 5270.11, § 541.25 and § 541.26;

D. Immediately issue Protective Masks and at least (3) 4fl.oz
of liquid soap per inmate, per week OR allow prisoners to
purchase their own soap from commisary;

E. Submit a proposed plan to the Court which outlines what, how,
when an emergency panic system will be implemented in EVERY
cell in FCI Loretto that has a lock on it and is for SHU
or Quarantine purposes;

F. Immediately cease the prohibition of prisoners in the SHU from
having in their possession in their cells their publications;

G. Allow prisoners in the SHU to have exercise time in the rec.
areas for at least one hour per day (Mon-Fri);

H. Allow and create a schedule where all prisoners in the SHU will be
either placed in the law library or have a mobile computer which
they can operate from their cells;

I. Submit records to the Court that clearly demonstrate who has
been Approved for Home Confinement as of 12/4/2020, the reasons
thereof and demonstrating the prisoners who are being experiently

processed to Home Confinement and/or Halfway house within (15) days of this ORDER;

J. Place Terence Crawley in Home Confinement to the maximum time allowable by law immediately.

28.) Plaintiff requests a jury trial on all issues triable by jury;

29.) Plaintiff's costs in this suit and any Applicable Attorney Fees;

30.) Any additional relief this Court deems just, proper, and equitable.

Dated: 12/6/2020

Respectfully Submitted,

Terence Crawley, Pro-Se
#14192-084
FCI Loretto
P.O. BOX 1000
CRESSON, PA 16630-1007

## <u>VERIFICATION</u>

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury 28 USC §1746, that the foregoing is true and correct.

Executed at ~~Cresson~~ Loretto, Pennsylvania on 12/6/2020

/S/ Terence J. Crawley

Terence J. Crawley

## <u>CERTIFICATION OF COMPLIANCE</u>

I, Terence Crawley have to the best of my ability as a layman and pro se litigant sought to comply with all Court rules relating to the form of my submission of this civil complaint.

/S/ Terence L Crawley, Prose

## <u>Certificate of Service</u>

I, Terence Crawley hereby certify under penalty of perjury 28 USC §1746 that this Civil Complaint was mailed to the Clerk of the U.S. Dist. Ct. for the Western District of PA located at: Penn Traffic Building, 319 Washington St., Rm. 208, Johnstown, PA 15901, by deposit into the institutional

mails at FCI Loretto, with postage pre-paid with Certification
AND Green Return Receipt on  12/16/2020.  The defendants shall
be served by the U.S. Marshall's under Rule 4(c) of the Fed. R. of Civil Proc..

Terence J. Crawley, Prose
#14192-084
FCI Loretto
P.O. Box 1000
Cresson, PA 16630-1007

/s/ _____